UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
WILLIAM P. WICKLAND,

                *Plaintiff,*

         -against-

ARCHCARE AT TERRANCE CARDINAL COOKE
HEALTH CARE CENTER, *et al.,*

                *Defendants.*
------------------------------------------------------------------x

**MEMORANDUM & ORDER**
22-CV-1395 (OEM) (SJB)

**ORELIA E. MERCHANT, United States District Judge:**

Pro se plaintiff William P. Wickland ("Plaintiff") brings this suit against his former employer, Archcare at Terrance Cardinal Cooke Health Care Center ("Archcare"), and two of Archcare's human resources directors, Barbara Munoz ("Director Munoz") and Christene Nation-Jumpp ("Director Jumpp") (collectively with Archcare, "Defendants"), for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Specifically, Plaintiff complains of sex-based discriminatory termination of his employment and retaliation. Before the Court is Defendants' motion to dismiss the complaint. For the reasons below, Defendants' motion is **GRANTED,** and this action is **DISMISSED** with prejudice.

## BACKGROUND

### A. Factual Allegations[1]

Plaintiff was a male security guard employed by Archcare. Compl. at 27. His employment commenced on or about September 28, 2020. *Id*. From July 2021 to February 2022, Plaintiff

---

[1] The following facts are taken from the Plaintiff's form discrimination complaint (the "Complaint" or "Compl."), ECF 1, and the attachments thereto and are assumed true for the purposes of this motion only. The form Complaint submitted by Plaintiff contained limited allegations. *See* Compl. at 1-14. However, Plaintiff also attached over one hundred pages of material to the Complaint. Compl. at 15-130.

1

encountered numerous conflicts with his co-workers.  *See* Compl. at 27-28, 35-49, 57, 62, 64-66, 69, 76.

First, in or about July 2021, Plaintiff reported to his union delegate, Fred Austin ("Delegate Austin"), that he was being "harassed and bullied at work" by another security guard, Martha, who told Plaintiff he talked too much and who was alleged to have "issue[s] with people of color." Compl. at 42-44; 47.

On or about August 14, 2021, Plaintiff reported another incident to Delegate Austin. Specifically, Plaintiff reported that on the previous day, August 13, his co-worker Brenda Deacon ("Deacon") allegedly threatened him with "physical violence" and called Plaintiff a "snake and liar" in the presence of coworkers and Archcare residents.  Compl. at 35, 62.  According to Plaintiff, Deacon's threats were in response to Plaintiff telling another union delegate that Deacon had been watching movies on her phone during work.  Compl. at 35.

On September 20, 2021, Director Munoz sent a letter to Plaintiff acknowledging his concerns about "unprofessional/inappropriate behavior and alleged workplace harassment (bullying) from perspective peers."  Compl. at 25.  The letter informed Plaintiff that Archcare had undertaken an investigation, including interviewing Plaintiff's peers, and that the investigation had failed to substantiate Plaintiff's allegations.  Compl. at 25.  Director Nation-Jumpp was copied on the letter.  *Id.*

In or about September 2021, Plaintiff filed another complaint with Delegate Austin complaining about an incident where another co-worker allegedly referred to Plaintiff as "grandfather" when Plaintiff called another guard post despite knowing Plaintiff's name, which Plaintiff took as being "discriminated against because of [his] age."  Compl. at 45.

On October 28, 2021, Delegate Austin sent an email to Director Munoz to investigate another conflict involving Plaintiff, where a coworker asked Plaintiff to "go outside" and fight, and that same coworker told an Archcare resident that he was going to get Plaintiff fired. Compl. at 28, 50-53. Like before, investigation did not substantiate Plaintiff's claims. Compl. at 28.

This series of disagreements culminated in late January 2022, when Plaintiff reiterated allegations that Deacon had been constantly threatening and harassing Plaintiff, telling others that she was going to "get [Plaintiff] physically hurt." Compl. at 37, 76. Director Munoz and Director Jumpp were both contacted to address the issue. Compl. at 41, 68.

Plaintiff requested, and Archcare granted him, Family and Medical Leave Act ("FMLA") leave from March 31 to May 4, 2022. Compl. at 85.

## B. Plaintiff's Termination and the EEOC Charge

On May 10, 2022, Archcare organized a virtual conference to be attended by Plaintiff and his peer to "address [Plaintiff's] return to work and to conclude a previous discussion on February 10th regarding a mediation between" Plaintiff and his peer. Compl. at 81. Also in attendance were Plaintiff's union representatives and Director Munoz. *Id.* "During the meeting all parties were made aware that this meeting was to conclude [Plaintiff's] complaint and to establish return to work expectations." *Id.* Plaintiff was dissatisfied with the tenor of the call and made further allegations about statements his peer had made. *Id.* Archcare attempted to "reassure [Plaintiff] that there was nothing to be concerned with," however Plaintiff disconnected – *i.e*, hung up – during the call and did not call or show up for work for the following three days. *Id.* Archcare took these three days of "no call no show" as a sign of Plaintiff's voluntary resignation per internal Archcare policies. Compl. at 81. Thus, on May 16, 2022, Archcare sent a letter to Plaintiff outlining the foregoing and stated it had "determined that plaintiff [had] voluntarily resigned from

3

[his] position as Security Guard" and that his "effective date of termination" was March 16, 2022. Compl. at 81.

On or about May 15, 2022, Plaintiff was purportedly a witness to another incident of harassment where a female Archcare security guard, Tamika Lee, was verbally abused and threatened by another male security officer, Moises Perez. Compl. at 5, 22-23. Perez was suspended and fired shortly thereafter. Compl. at 5, 19.

On June 8, 2022, Plaintiff filed a sex-based discrimination charge with the Equal Employment Opportunity Commission ("EEOC") and amended the charge on June 30 (the "EEOC Charge"). Compl. at 19. Plaintiff's EEOC Charge recites, *inter alia*, that he complained to management about Deacon's continued threats of physical violence towards him; that human resources conducted two full investigations of his complaints but "revealed that no further action was needed"; that human resources allegedly "never interviewed any of [his] two main witnesses"; that an incident verbal of harassment occurred between Perez and Lee resulting in Perez's termination. *Id.* The EEOC charge concluded with Plaintiff alleging that he believed he was "being discriminated because of [his] sex." *Id.*

On November 23, 2022, a law firm retained by Archcare transmitted a letter to EEOC inspector Michael Woo in response Plaintiff's EEOC Charge ("EEOC Response Letter"). Compl. 26-32. The EEOC Response Letter recounts the same facts of Plaintiff's August and October 2021 complaints as well as Archcare's investigatory responses and its conclusion that the complaints were unsubstantiated.

On January 19, 2023, Plaintiff received a Notice of Right to Sue from the EEOC allowing him to file suit in this Court. Compl. at 16.

4

### C. Procedural History

Plaintiff filed his Complaint on April 12, 2023. On September 18, 2023, Defendants filed their Motion to Dismiss, ECF 19, and a Memorandum in Support of Motion to Dismiss, ECF 20. The Court granted Plaintiff several briefing extensions and ultimately set his response to Defendants' motion as due on January 5, 2024.[2] To date, Plaintiff has failed to file a response.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id.*

When a motion to dismiss is unopposed, the court "may not find for the moving party without reviewing the record and determining whether there is sufficient basis for granting the motion." *Emerson v. Comm'r of Soc. Sec.*, 12-CV-6451 (PAC) (SN), 2014 WL 1265918, at *9 (S.D.N.Y. Mar. 27, 2014). Lastly, "*pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.'" *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (citing *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir. 1996)).

---

[2] The Docket reflects that Plaintiff was served motion papers via overnight mail on September 18, 2023, ECF 12. However, by letter dated October 3, 2023, Plaintiff filed for an extension based on purported service issues. ECF 13. The Court granted Plaintiff an extension to file opposition papers by November 6, 2023. On November 2, 2023, Plaintiff requested another extension. ECF 17. The opposition filling date was extended to November 27, 2023. On December 12, 2023, the Court granted a final extension to January 5, 2023, for the service of opposition papers.

# DISCUSSION

Defendants raise three arguments in support of the dismissal of the entire Complaint: (1) Plaintiff's claims against individual defendants Director Munoz and Director Jumpp are precluded as there is no individual liability under Title VII; (2) Plaintiff's failure to exhaust administrative remedies procedurally bars his Title VII termination claim; and (3) on the merits, Plaintiff failed to allege plausible unlawful termination and retaliation claims against Archcare.

### A. Plaintiff Failed to Consider Title VII Individual Immunity

"It is well-settled in the Second Circuit that 'individuals are not subject to liability under Title VII" whether they are sued in their personal or official capacity. *Carmody v. Vill. of Rockville Ctr.*, 661 F.Supp.2d 299, 326 (E.D.N.Y. 2009) (citing *Patterson v. County of Oneida,* 375 F.3d 206, 221 (2d Cir. 2004)). All of the claims asserted by the Plaintiff against the two individual defendants Director Munoz and Director Jumpp were brought pursuant to Title VII. *See* Compl. at 3. Accordingly, all claims against Director Munoz and Director Jumpp are dismissed.

### B. Plaintiff Failed to Exhaust Administrative Remedies for His Termination Claim Against Archcare

"As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir. 2003). A claim that has not been exhausted may still be heard by the court if it is "reasonably related" to allegations contained in the EEOC charge. *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.,* 274 F.3d 683, 686 (2d Cir. 2001). But "the [reasonably related] rule does not permit a plaintiff to bring suit based on alleged prior acts . . . that could have been, but were not, asserted in the EEOC charge that was filed." *Sussle v. Sirina Prot. Sys. Corp.,* 269 F.Supp.2d 285, 315 (S.D.N.Y. 2003) (quotation omitted).

While Plaintiff's EEOC Charge alleges he was discriminated based on sex and discusses alleged threats of physical violence, it nowhere mentions his *termination* on May 16, 2022, as a basis for filing the charge, much less that he was terminated on the basis of his sex. *See* Compl. 19. In other words, Plaintiff had ample opportunities to assert his termination-because-of-sex claim to the EEOC and chose not to. As Plaintiff could have asserted his termination was unlawful under Title VII to the EEOC but did not do so, the Court finds that Plaintiff has failed to exhaust administrative remedies as to any potential termination claim and it is therefore dismissed. *See James v. Fed. Reserve Bank of N.Y.*, 2005 U.S. Dist. LEXIS 43493, *14-15 (E.D.N.Y. 2005), *aff'd*, 2007 U.S. Dist. LEXIS 5357 (E.D.N.Y. 2007) (dismissing discrimination claim where claim was not alleged in EEOC charge).

### C. Plaintiff Fails to Plausibly Allege Title VII Claims Against Archcare

Assuming *arguendo* that Plaintiff had not exhausted his administrative remedies, the Complaint still fails to allege sufficient factual matter to support either a termination claim, a retaliation claim, or a hostile work environment claim.

#### 1. Plaintiff Fails to Allege Sufficient Facts to Support a Plausible Title VII Termination Claim

A plaintiff alleging discrimination under Title VII needs only to plausibly allege that (1) the employer took adverse action against him; and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).

As to the first element, termination of employment is a well-established adverse action under Title VII. *See id.* at 85 ("Examples of materially adverse changes include termination of employment . . ."). As to the second element, at the pleading stage a plaintiff has only a "'*minimal* burden' of alleging facts "suggesting an inference of discriminatory motivation" for the adverse

7

action. *Id.* at 85 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)) (emphasis in original). That is, discrimination need not be demonstrated by direct evidence as "rarely is there direct, smoking gun, evidence of discrimination." *Vega*, 801 F.3d at 86. "Instead, plaintiffs usually must rely on 'bits and pieces' of information to support an inference of discrimination, *i.e.*, a 'mosaic' of intentional discrimination." *Id.* (citation omitted). Discriminatory motive may be inferred from an employer's actions including "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn*, 795 F.3d at 312 (quotation marks omitted).

While Plaintiff satisfies the first prong because he was terminated by Archcare on May 16, 2022, he fails to establish any facts meeting the "minimal burden" of showing his termination was motivated by discriminatory intent based on his sex. Compl. at 81. None of the facts alleged in any portion of the Complaint include any negative comments from Archcare that could possibly be construed as targeting Plaintiff's sex.

Neither has Plaintiff painted a sufficient picture showing he was subject to less favorable treatment than those of his opposite sex. Construed liberally, Plaintiff argues that he was treated less favorably by Archcare than a female colleague because Plaintiff's female colleague, who also faced verbal abuse and reported it to management, had her abuser fired while his purported abuser, Deacon, was allowed to stay employed. *See* Compl. at 6, 19, 22-23. However, even assuming *arguendo* that this establishes a "minimal inference of discriminatory motivation" in his termination, Archcare has carried its burden to "articulate some legitimate, nondiscriminatory reason" for the disparate treatment. *See Vega*, 801 F.3d at 87 (quoting *McDonnell Douglas Corp.*

8

*v. Green*, 411 U.S. 792, 802 (1973)) (A "plaintiff may prove discrimination indirectly either by meeting the requirements of *McDonnell Douglas* and showing that the employer's stated reason for its employment action was pretext to cover-up discrimination."). Here, the obvious alternative explanation is that Plaintiff was fired due his three days of "no call no show" to his job at Archcare. Consequently, Plaintiff fails to carry his minimal burden. *See Twombly*, 550 U.S. 544, 568, 570 (2007). Further, there is no other evidence in the Complaint showing that this termination was pretextual. Indeed, the May 10, 2022, meeting was set up for the purpose of establishing the expected level of professional conduct upon Plaintiff's return to work. Thus, any claim of discriminatory termination is without merit and dismissed. *See Bockus v. Maple Pro, Inc.*, 850 Fed.Appx. 48, 51 (2d Cir. 2021) (granting 12(b)(6) motion where plaintiff failed to allege that "anyone at [employer] ever said or did anything that suggested, prior to [plaintiff's] termination, that [employer] treated men less favorably as a group, or otherwise operated on the basis of sex stereotyping").

### 2. Plaintiff Failed to Allege Sufficient Facts to Support a Plausible Title VII Retaliation Claim

Similarly, the facts here are insufficient to state a retaliation claim against Archcare. A *prima facie* Title VII retaliation claim requires a plaintiff to establish that: (1) the plaintiff was engaging in a protected activity; (2) the employer was aware of that activity; (3) the plaintiff suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action. *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012).

A "protected activity" is an "activity 'taken to protest or oppose statutorily prohibited discrimination … include[ding] 'making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of coworkers who have filed formal charges.'" *Antoine v. Brooklyn Maids 26, Inc.*, 489

F.Supp.3d 68, 85 (E.D.N.Y. 2020) (citation omitted). Plaintiff's multiple emails to Archcare complaining about workplace hostilities amount protected activity and Archcare's various responses establish its awareness of that activity. *See* Compl. at 27, 35, 42-45, 62. Plaintiff likewise experienced a "material adverse action" as he was terminated from his job at Archcare. *See Vega*, 801 F.3d 72, at 85; Compl. at 27, 81.

However, even construed most liberally, there is simply no causal connection between Plaintiff's involvement in protected activities –i.e., his emails to Archcare management regarding various disputes with fellow employees – and his termination. Causal connection in retaliation claims can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment…or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn*, 795 F.3d at 319 (citing *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

Here, Plaintiff fails to establish causation either directly or indirectly. First, there is no evidence that any putative discriminatory treatment by Archcare was followed closely after Plaintiff's protected activity. Plaintiff's last complaint email that could possibly constitute a protected activity was sent in January 2022. Despite this, he remained employed with Archcare until May 16, 2022. *See* Compl. at 25, 28, 85. While the Second Circuit has not developed a bright line rule with respect to passage of time, "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line." *Cunningham v. Consol. Edison, Inc.*, 03-CV-3522, 2006 WL 842914, at *19 (E.D.N.Y. Mar. 28, 2006) (collecting cases). Accordingly, Plaintiff cannot establish causation through temporal proximity of the events.

Second, as previously discussed, there is no evidence in the Complaint showing that Archcare's decision to terminate Plaintiff was brought about by any retaliatory animus or

sentiment against Plaintiff based on his sex.  As an initial matter, nowhere in the more than one hundred pages attached to the Complaint did Archcare or its representatives make any specific negative reference to Plaintiff's sex.  *See generally* Compl.  To the contrary, Archcare responded to Plaintiff's allegations of unwelcoming and antagonistic work environment by investigating the claims, interviewing his peers, and holding a department meeting with his Union Representative to address expectations of workplace conduct.  *See* Compl. at 25, 29.  Archcare also set the May 10, 2022,  conference subsequent to which Plaintiff was a  no-call, no-show for work.  *See* Compl. at. 81.

As Plaintiff fails to establish the element of causation, any potential retaliation claim is also dismissed.  *See Dechbery v. City of New York,* 14-CV-2130, 2017 WL 1168333, at *8 (E.D.N.Y. 2017) (granting motion to dismiss where plaintiff failed to demonstrate causal connection through either method).

### 3. Hostile Work Environment Claim

Lastly, construing Plaintiff's pleadings most liberally, Plaintiff's Complaint, EEOC Charge, and accompanying documentation might suggest a potential hostile work environment claim against Archcare.[3]  *See* Compl. 29-31 (EEOC Response Letter discussing potential hostile work environment claim).  However, any such claim fails because to state a "hostile work environment claim under Title VII or [New York law] the plaintiff must show that 'a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Ringel v. New York City Dep't of Educ.*, 616 F. Supp. 3d 205, 228 (E.D.N.Y. 2022).  Such claim lies where, among

---

[3] A "hostile work environment" is one that  is "severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *See Alfano v. Costello*, 294 F.3d 365, 373-73 (2d Cir. 2002).  However, "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

other things, the employer "provided no reasonable avenue of complaint or knew of the harassment and failed to take appropriate remedial action." *Id.*

While it is true that "[p]ro se complaints are construed liberally by the Court, [they] are not entirely immune from the rules of pleading." *Jones v. Dep't of Hous. Pres. & Dev.*, 6-CV-2085 (LAP), 2007 WL 582751, at *1 (S.D.N.Y. Feb. 22, 2007). Here, it is plain that Archcare was responsive to both Plaintiff's complaints, conducted investigations, and even had gone so far to set up meeting with Plaintiff to discuss his complaint prior to his return from FMLA leave. Compl. at 81. Thus, any potential hostile work environment claim is without merit.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss the complaint is **GRANTED,** and Plaintiff's claims are **DISMISSED** with prejudice. The Clerk is respectfully directed to enter judgment and close the case.

**SO ORDERED.**

/s/ Orelia E. Merchant
ORELIA E. MERCHANT
United States District Judge

Dated:     July 15, 2024
           Brooklyn New York

12